RANDOLPH and others, Trustees, appellants, and MIDDLETON
and others, respondents.

1. An act of the legislature, the effect of which is to make a loan of
money become due before the time fixed in the contract, cannot be
enforced.

2. A mortgage was given by a railroad company to trustees, to secure
certain bonds, one of the terms of which mortgage being, that if the prin-
cipal or interest should not be paid at the times stated, the principal sum
secured by the mortgage should become immediately due "at the election
at the trustees." *Held*, a subsequent act of the legislature could not
authorize a sale of the property, free from this mortgage, the trustees not
having exercised such election, and the mortgage moneys not being due.

Appeal from a decree of the Court of Chancery. The
opinion of the Chancellor is reported in 10 *C. E. Green* 306.

*Mr. J. F. McGee* and *Mr. C. Parker*, for appellants.

*Mr. Abeel, Mr. Coult*, and *Mr. McCarter*, for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

This was a proceeding in the Court of Chancery against
The New Jersey West Line Railroad Company, as an insol-
vent corporation. On the filing of the bill, an injunction
issued, and by a subsequent order, a receiver was appointed;
and this officer having made a report of the condition of the
company, and showing its insolvency, a decree was signed,
directing the receiver to sell the franchises and property
of the company, in a mode therein particularly described.
This decree also ordered that these franchises and property
should be sold, with certain exceptions, clear of all encum-
brances. It is from this decree to sell, that the appeal has
been taken.

The appellants are trustees in a mortgage, bearing date 11th March, 1870, given to them by the railroad company, by virtue of a supplement to their charter, enacted in the year 1869. *Pamph. L.*, *p.* 425. It suffices here to state, in general terms, that this mortgage was on the railroad and franchises of the corporation, its purpose being to secure the payment of the bonds of the company for the aggregate amount of $3,000,000. The complainant, who is the appellee in this court, is the owner of a large number of these bonds.

This procedure, thus culminating in the decree of sale, was founded, exclusively, on the act of 1870 (*Pamph. L.*, 55), which is a supplement to the act to prevent frauds by incorporated companies. I thus refer to this act as the sole authority and justification for the decree now to be considered, as it is so treated in the opinion of the Chancellor, and, also, as it seems to me undeniably manifest that these proceedings are entirely destitute of the exhibition of many of the facts which are necessary to legalize judicial action of this nature against an insolvent corporation, by virtue of the original act, or any of its supplements, which were passed antecedently to the one now referred to. Indeed, it appears, upon looking into these papers, as though the solicitor conducting the cause, had intentionally, and with some care, avoided putting his case within the operation of those earlier laws, there existing, no doubt, some good reason for so doing. But, whatever the motive, the result is obvious. The decree must find support in this supplement of 1870, or it has nothing whatever to rest upon.

And it is from this posture of the case that the exceptions which have been taken to this decree, have been and ought to be substantiated. The mortgage held by the appellants, is prior to the enactment of this statute; and the complaint is, that the decree, founding itself on this act, has taken away from the appellants certain remedies for the enforcement of their mortgage, to which, at the time of its execution, they became entitled. In support of this contention that clause in the constitution of the state which forbids

the legislature to pass any law " impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract, which existed when the contract was made," has been relied on.

These remedies and privileges, the deprivation of which laid the ground of this objection, were several in number, being given by the express stipulations of the mortgage. The general character of this instrument has been referred to ; it was made to the appellants by the railroad company to secure the bonds before mentioned, and was in trust, and conferred upon the trustees certain valuable privileges, in case of a failure, on the part of the corporation, to pay the interest or principal of the debt at the time designated. Among the rights thus given was one to the effect that, in default of payment of the moneys accrued, according to the agreement, it should be lawful for the trustees to take possession of the franchises and railroad, and to operate it, and to conduct its business, applying the moneys thus realized to the liquidation of the debt ; and a second right, to the effect that such trustees, at their discretion, might sell the road and franchises for the same purpose. As it was obvious that the sale, by force of the present decree, takes away or supersedes these privileges, it was urged that such assent was illegal, by reason of the constitutional clause just quoted. The argument before this court, on this subject, was interesting and instructive, involving, as it did, the authority of the company to insert in their mortgage the stipulations in question, and a construction of the statute by virtue of which the instrument had been executed, as well as various principles of the law relating to the powers in general of corporations of this class. But this case, in the view in which it presents itself to my mind, does not call for a decision of any of these important matters ; for, quite aside from any point of intricacy, there seems to me a plain ground of solution. I refer to the stipulation contained in the fifth article of the condition of this mortgage, which is in these words :

" In case default shall be made in the payment of any half year's interest, on any of the said bonds, at the time and in the manner in the coupon issued therewith provided, the said coupon having been presented for payment, and the payment of the interest therein specified having been demanded, and such default shall continue for the space or period of three months after the interest expressed in said coupon shall have become due, and from and after the coupon shall have been presented, and the payment thereof demanded as aforesaid ; then and thereupon, the principal of all the said bonds shall, at the election of the trustees, become immediately due and payable."

The principal moneys secured by the mortgage were not to fall due until the first day of May, 1900, unless by force, upon the contingency mentioned, of the exercise of the option of the trustees as specified in the clause just quoted. There is nothing in the case to show that the trustees have, in any manner, elected that these principal moneys should become due by reason of the default in the payment of the interest due upon the bonds. The consequence then is, that, as the case stands before this court, these principal moneys must be regarded as not due until the year 1900.

Now it is clear that the effect of the present decree is to divert, at once, the lien of this encumbrance on the land, and to make these moneys payable forthwith ; and this is done by force of the act of 1870, in which the decree takes root. The inquiry arises, therefore, has the legislature the competency to produce such a result ?

I have failed to find an affirmative answer to this question. It is certain, in a contract for a loan of money, the time fixed for repayment is a material matter, so that to hasten or postpone such period, is to alter such contract in point of substance. If I lend a sum of money on a credit of ten years, it seems certain that I cannot be compelled to accept repayment at any period short of the time so fixed, by force of any legislative act which can be subsequently framed. The constitution of the state, if it is to be of any avail, must annul any

such law. This proposition is so plain it will not bear discussion. And it, likewise, seems equally plain that it applies, with its entire force, to the facts now presented. The money is not due on this mortgage, except at the will of the trustees, for over twenty years. This act of the legislature was passed after the making of the mortgage, and yet this act, entering into the decree appealed from, has directed a sale of the property to pay this money, forthwith. If this statute authorizing, in case of the insolvency of corporations of this class, the appointment of a receiver and the sale of the corporate property, free from all encumbrance, had been in existence at the time of the execution of this mortgage, an entirely different problem would have been presented for solution. In such a condition of things, it might well be held that such a provision of the general law would enter into the substance of the contract, and become a part of it; this would be in harmony with practice and with theoretical principles. But the law now in question, and which, by the form in which the case has been put, is the only statute now applicable, was not enacted at the time these parties agreed for this term of credit; and the consequence is, if it is to prevail against this stipulation, its action, in effecting such a result, must be quite arbitrary.

None of the decisions made upon this subject, in this state, stand upon reasons which will justify this decree. In the case of *Potts* v. *Trenton Water Power*, 1 *Stockt.* 592, the works of the corporation were sold free of encumbrances, by receivers appointed under an act of the legislature, specially enacted for the purpose. In the discussion, on that occasion, it was argued that this act was unconstitutional, upon the ground that it impaired the obligation of contracts, and deprived parties of existing remedies. But the objection did not prevail; it being held that the remedy provided by the particular law, was not unlike existing remedies, and was more efficacious. But there the decree did not, against the will of the creditor, expedite the payment of a loan; and the law itself, justifying the decree, in regard to its general nature, did not receive an approval, except with reference to its application

to the case then in hand, for Chief Justice Green guardedly says of it: "It violates no principle of justice. If made with the assent of prior encumbrances, it conflicts with no rule of law." In truth, all that was decided in the case, on the point in question, was, that a new remedy of greater efficiency, could be substituted with respect to past contracts for one previously existing. And, within the limit of this principle, and to the same effect, is the decision in *Potts* v. *The New Jersey Arms and Ordnance Co.*, reported in 2 *C. E. Green* 398. In that case, as in the former, a sale was decreed by a receiver, accompanied with a direction that the property of the insolvent corporation should be sold clear of all encumbrances, this latter order being made in pursuance of a statute passed after such liens had attached. The new remedy thus provided was more beneficial than the old one, and it was held to be a valid act of legislation. This decision does not maintain any different doctrine from that enunciated in the case of *Rader* v. *The Southeasterly Road District*, reported in 7 *Vroom* 274. This line of cases adopt the rule, that it is within legislative competency to unseat old remedies, giving substitutes which are equally efficient, and in all respects as beneficial as a means of enforcing antecedent contracts. But no one of these cases contains any suggestion, or indication, that a contract, calling for a payment of money, that in this respect has not matured, can be made so, by a posterior act of legislation. This is the result effected by the present decree, and, on that account, such decree, in my opinion, should be reversed.

Decree unanimously reversed.